UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| WAYNE ROGERS, | : | |
| Plaintiff, | : | CASE NO. 3:16-cv-457 (MPS) |
| | : | |
| v. | : | |
| | : | |
| GERALD HINES, et al., | : | |
| Defendants. | : | DECEMBER 20, 2016 |
| | : | |

**RULING ON DEFENDANTS' MOTION TO DISMISS
AND PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff Wayne Rogers, currently incarcerated at the MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed this case *pro se* under 42 U.S.C. § 1983. By Initial Review Order filed May 4, 2016, the Court dismissed all claims against Defendants Chapdelaine, Guadarrama, Millian, Malorana, and Bennett. The claims against defendants Hines, Rivera, Anaya, Mahoney, Strange, Danek, Mclain, and Simmons[1] for sexual assault and sexual harassment, use of excessive force, unconstitutional conditions of confinement, supervisory liability, and deliberate indifference to safety remain pending. *See* ECF No. 13 at 10.

The defendants move to dismiss some of the remaining claims on the grounds that the court lacks jurisdiction and the plaintiff fails to state cognizable claims.[2] The plaintiff has filed a

---

[1] Plaintiff incorrectly identified this defendant as Simons in the complaint. The Court will use the correct spelling.

[2] Defendants filed their motion to dismiss (ECF No. 34) on August 29, 2016. The following day, they filed a second motion to dismiss (ECF No. 35) to include exhibits omitted from the original motion. The second motion to dismiss is redundant and is hereby DENIED.

memorandum in opposition to the motion along with a second amended complaint. In his memorandum, the plaintiff mistakenly assumes that he may file an amended complaint as of right in response to a motion to dismiss. Federal Rule of Civil Procedure 15(a)(1) provides that "a party may amend its pleading once as a matter of course…." The plaintiff filed an amended complaint on April 8, 2016. Thus, he may amend his complaint only with the written consent of the defendants or leave of court. *See* Fed. R. Civ. P. 15(a)(2). As the plaintiff neither submitted written consent from the defendants nor sought leave of court to file a second amended complaint, the second amended complaint is ordered stricken from the record. The Court considers the motion to dismiss as applied to the first amended complaint. For the reasons that follow, the motion is granted in part and denied in part.

I. Facts

The plaintiff alleges the following facts in the amended complaint. The plaintiff was transferred to MacDougall-Walker Correctional Institution in August 2015, after being regressed to Phase I of the Security Risk Group Program. Defendant Mclain began making sexual gestures and comments to the plaintiff. He also began requiring the plaintiff to undergo strip searches before recreation and phone time. Defendant Mclain required the plaintiff to bend at the waist and spread his buttocks instead of utilizing the normal procedure of squatting and coughing.

The plaintiff became uncomfortable with the comments. In early September 2015, he submitted an inmate request to Unit Manager Rivera. For the next few weeks, the comments stopped but the full strip searches continued. The plaintiff assumed that this change in conduct was the result of defendant Rivera speaking to defendant Mclain.

In October 2015, the situation worsened. Inmates in Phase I only shower three days per week. Following a workout, the plaintiff partially covered his cell door window while he washed himself at the sink. Defendant Mclain stopped at plaintiff's cell and insisted that the plaintiff uncover the window. He then made a suggestive comment about plaintiff's lips and walked away. The plaintiff again complained to defendant Rivera. The comments stopped for the next six weeks.

On November 23, 2015, the plaintiff was exercising in his cell when defendant Mclain toured the unit. Defendant Mclain commented that the plaintiff needed more protein and later, when distributing food, gave the plaintiff an apple. Following the meal, which was eaten in the cell, the plaintiff covered his cell door window to wash up in the sink. Defendant Mclain toured the unit and ordered the plaintiff to remove the covering. When the plaintiff uncovered the window, defendant Mclain made sexually suggestive comments about the plaintiff's body. The plaintiff re-covered the window and told defendant Mclain to go away.

That evening the plaintiff had a scheduled phone call. Defendant Simmons came to the cell with another officer to escort the plaintiff to his call. The plaintiff and his cellmate were ordered handcuffed and the plaintiff was escorted to the phone call. When defendant Simmons was about to uncuff plaintiff's cellmate, defendant Mclain stated that he wanted to search the cell. Plaintiff's cellmate was escorted to the showers for the duration of the search.

A tattoo gun was found in the cell. Defendant Danek was called to the housing unit. The plaintiff admitted that the tattoo gun was his and received a disciplinary report for contraband. The plaintiff and his cellmate were moved to another cell because a light in their cell was broken. While property was being transferred to the new cell, the plaintiff was standing against the back

3

wall of the new cell.  Defendant Mclain was standing with his left hand against the plaintiff's chest.  The plaintiff assumes that this was in accordance with department policy.  Defendant Mclain then grabbed the plaintiff's genitals with his right hand and stated that the plaintiff should have "made it easier," ECF No. 10 at 21, ¶ 15, implying that the disciplinary report was issued because the plaintiff failed to cooperate with defendant Mclain.  The plaintiff reported the conduct to defendant Danek, who treated it as a joke.  The plaintiff requested preservation of video of the officer in his cell and leaving it.  That evening, the plaintiff submitted a request to Deputy Warden Hines regarding sexual harassment.

     On November 24, 2015, the plaintiff spoke to defendant Rivera about his issues with defendant Mclain.  That evening, defendant Mclain distributed the meals.  When defendant Mclain told the plaintiff to come and get his tray because it was special and would help him grow strong, the plaintiff threw the food at defendant Mclain.  The plaintiff hoped that this action would result in creation of a separation profile to keep him away from defendant Mclain.  Either defendant Mclain or defendant Simmons closed the food trap.  Defendant Mclain threatened to beat the plaintiff when he entered the cell.

     Defendants Anaya, Strange, and Mahoney arrived at the cell.  When defendant Strange asked who threw the food and why, the plaintiff explained what had happened the night before and that he was trying to get a separation profile.  Defendant Mahoney ordered the plaintiff to be handcuffed and taken to restrictive housing.  The plaintiff stated that he did not feel safe without a camera present.  Defendant Mahoney stated that no camera was necessary and began to spray a chemical agent into the plaintiff's cell.  The plaintiff attempted to block the spray with his hands and mattress.  Defendant Simmons ripped the mattress while trying to pull it away from the

4

plaintiff. The mattress became lodged in the food trap. Defendant Mahoney threatened to physically assault the plaintiff when he arrived in restrictive housing. Defendant Anaya ordered defendant Mahoney to calm down. He also ordered a camera operator to record the remainder of the incident. The plaintiff was handcuffed and defendant Strange escorted him to restrictive housing for decontamination. The plaintiff requested preservation of this recording.

The plaintiff was improperly decontaminated. He was subjected to a forceful strip search and confined in in-cell restraints per order of defendants Anaya and Strange. Although Department of Correction policy states that in-cell restraints should be used only to gain compliance from acutely disruptive inmates, correctional staff routinely use in-cell restraints as punishment whenever a supervisor is disobeyed.

The plaintiff was placed in a behavior observation cell that smelled of feces and urine. The plaintiff later discovered that there were feces under the bed, and smeared on the walls and window sill. There was urine all over the floor and blood on the sink and toilet. The cell was very cold and the plaintiff was not permitted socks. When the plaintiff complained about the cell conditions, defendant Mahoney stated that he could not smell anything and that the plaintiff did not deserve better. Over the next few days, the plaintiff vomited several times from the smell, he became sick whenever he ate and, when he left the cell, felt as if he had a fever for the next few days. Plaintiff remained in the cell for sixty-four hours. During the entire time, the lights remained on. The conditions prevented the plaintiff from performing his religious prayers.

When the plaintiff returned to his cell, he found that defendant Mclain was still assigned to the housing unit. He requested a separation profile. Defendant Hines denied the request. The plaintiff filed several inmate requests, grievances, and grievance appeals. Many of these

documents did not reach their intended destinations. The plaintiff observed several of his grievances in the trash in the office shared by defendant Rivera.

II.     Standard

When reviewing a motion to dismiss, the court accepts all allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Cruz v. Gomez*, 202 F.3d 593, 596 (2d Cir. 2000). The court need not, however, accept conclusory allegations. The case should proceed only if the complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (citing *Twombly*, 550 U.S. at 554-55). Determining whether the complaint states a plausible claim for relief is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal,* 556 U.S. at 679). Even under this standard, however, the court liberally construes a *pro se* complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Boykin v. KeyCorp*, 521 F.3d 202, 213-14 (2d Cir. 2008).

III.    Discussion

The defendants contend that the plaintiff fails to allege any constitutional claims that warrant court involvement in prison administration. They contend that the injunctive relief requested in the complaint is the epitome of court involvement in day-to-day prison administration. The defendants also argue that all claims against them for damageS in their official capacities are barred by the Eleventh Amendment. Finally, the defendants contend that many of the plaintiff's allegations fail to state cognizable claims for relief.

    A.     Official Capacity Claims for Damages

The defendants move to dismiss all claims for damages against them in their official capacities.  The Eleventh Amendment divests the district court of subject matter jurisdiction over claims for money damages against state officials acting in their official capacities unless the state has waived this immunity or Congress has abrogated it.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  Section 1983 does not abrogate state sovereign immunity, *see Quern v. Jordan*, 440 U.S. 332, 343 (1979), and the plaintiff has provide no evidence that the state has waived immunity.

In opposition to the motion to dismiss, the plaintiff states that he seeks damages from the defendants in their individual capacities only.  ECF No. 46-1 at 2, 4.  As this distinction was not included in the amended complaint and the plaintiff cannot amend his complaint through a memorandum, the defendants' motion to dismiss is granted as to any claims for damages against the defendants in their official capacities.  *See Wright v. Ersnt & Young*, LLP, 152 F.3d 169, 178 (2d Cir. 1998) (plaintiff cannot amend complaint in a memorandum).

B.      Requests for Injunctive Relief

In the amended complaint, the plaintiff seeks injunctive relief in the form of an order that defendant Mclain stop harassing him and have no contact with him.[3]  ECF No. 10 at 29, ¶ 53.  The defendants move to dismiss the request for injunctive relief on the ground that it would require the Court to become involved in the day-to-day administration of state correctional facilities.

The defendants argue that the Court should defer to the expertise of prison officials

---

[3] He also seeks an order that defendants Maiorana, Millian, and Bennett stop manipulating the grievance process.  However, all claims against these three defendants have been dismissed.

7

regarding the day-to-day operation of correctional facilities and not intrude absent a constitutional violation. They refer the Court to *Beard v. Banks*, 548 U.S. 521, 529-30 (2006), and *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). These cases, however, involve challenges to prison regulations. *Beard*, 548 U.S. at 522 (challenge to prison policy restricting access to newspapers, magazines and photographs by inmates in most restrictive segregated housing unit); *Turner*, 482 U.S. at 81 (challenging constitutionality of mail and marriage regulations).

Here, the plaintiff does not challenge the constitutionality of any prison regulations or policies. Rather, he alleges that defendant Mclain sexually assaulted him and seeks a separation order from defendant Mclain.[4] The plaintiff does not seek expansive injunctive relief that would disrupt prison administration as the inmates in *Beard* and *Turner* did. He seeks the same relief that would have been afforded him if the Department of Correction had found that defendant Mclain sexually assaulted him.

Further, to obtain the requested injunctive relief, the plaintiff must prevail on his claim and demonstrate that he will be irreparably harmed should the relief be denied. The Court cannot conclude, based only on the amended complaint, that the requested relief is not warranted. The defendants' motion to dismiss the claims for injunctive relief is denied.

C.      Failure to State a Claim

The defendants contend that many of the plaintiff's allegations do not rise to the level of

---

[4] The defendants also contend that any injunctive relief based on the plaintiff's claims against defendants Hines, Danek, Anaya, Strange, Mahoney, and Simmons would require the Court to become involved in the day-to-day operation of prison facilities. A review of the prayer for relief in the amended complaint reveals no request for injunctive relief relating to defendants Hines, Danek, Anaya, Strange, Mahoney, and Simmons. Thus, there is no basis for this argument.

a constitutional violation. Specifically, the defendants challenge the claims against defendants Hines and Danek, and the excessive force and conditions of confinement claims against defendants Anaya, Strange, Mahoney, and Simmons.

1. Defendants Hines and Danek

In the Initial Review Order, the Court addressed the claims for deliberate indifference to safety against defendants Hines and Danek. The Court concluded that the plaintiff's allegation that he informed both defendants about defendant Mclain's actions but they took no, or insufficient, action, was sufficient to show disregard for sexual harassment by prison guards. The Court determined that the allegations were sufficient to state a plausible claim for deliberate indifference to safety against both defendants. The Court also determined that the allegation was sufficient to state a claim for supervisory liability against defendant Hines.

The defendants move to dismiss the deliberate indifference to safety claim against defendant Danek on the ground that he did not learn of defendant Mclain's actions until after they occurred. Thus, defendant Danek could not intervene and prevent the harm that already had occurred.

To state a claim for deliberate indifference to safety, the plaintiff must allege facts showing that he was incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with deliberate indifference to that risk and the plaintiff's safety. *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The plaintiff must show that the defendants knew of and disregarded a substantial risk of harm to his health or safety. *Id.* at 837. The defendants must have been aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists, and the defendants must draw that inference. *Id.*

9

The plaintiff alleges that supervisor defendant Danek arrived at the cell as defendant Mcclain was leaving it.  The plaintiff described defendant Mclain's actions to defendant Danek but his statements were not taken seriously.  The sexual harassment continued later that evening.  Even one incident of improper sexual contact, if done without penological purpose, can support an Eighth Amendment claim.  *Crawford v. Cuomo*, 796 F.3d 252 257 (2d Cir. 2015).   Although the Second Circuit has not addressed this issue, other courts have determined that unwanted sexual touching can form the basis of a deliberate indifference to safety or failure to protect claim.  *See, e.g., Mulder v. Schuyler Cnty Sheriff*, No. 14-CV-3274, 2015 WL 1188031, at *2 (C.D. Ill. Mar. 12, 2015) (allegation of unwanted sexual touching prevented court from ruling out a constitutional claim for deliberate indifferent to a substantial risk of serious harm).   In light of the holding in *Crawford*, and the plaintiff's allegations of continuing sexual harassment and disregard for his complaint, the Court concludes that the plaintiff should be able to conduct discovery regarding his claim against defendant Danek.  The defendants' motion to dismiss is denied as to this claim.

The defendants also move to dismiss the supervisory liability claim against defendant Hines.  Supervisory liability may be based on several different actions.  A supervisory official may have directly participated in the alleged wrongful actions, failed to remedy the wrong after being informed of the conduct, created a policy or custom that sanctioned unconstitutional conduct or permitted a policy or practice to continue, been grossly negligent in supervising the officer who committed the conduct, or failed to respond to information that unconstitutional acts were occurring.  *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003).

The defendants argue that, although the plaintiff alleges that he wrote to defendant Hines

about the misconduct, he does not allege that he actually delivered the letter.  Thus, the defendants contend that defendant Hines lacked actual knowledge.  Allegations that an inmate sent a letter of complaint to a supervisory official are sufficient to state a plausible claim for supervisory liability.  *See Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013).  Whether defendant Hines received the letter and had actual notice of the plaintiff's claims are questions better resolved at summary judgment after the plaintiff has had an opportunity to conduct discovery on these issues.  The defendants' motion to dismiss is denied as to the supervisory liability claim against defendant Hines.

          2.      <u>Excessive Force</u>

The defendants also move to dismiss the plaintiff's excessive force claim against defendants Anaya, Mahoney, Strange and Simmons based on confinement on in-cell restraints in a dirty cell.  They do not challenge the excessive force claim based on deployment of a chemical agent.

The issue on an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992).  The court should consider factors including "the need for application for force, the relationship between that force and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  *Id.* at 7 (internal quotation marks and citation omitted).

The defendants contend that placement on in-cell restraint status was warranted.  The plaintiff alleges, however, that he was no longer disruptive and complied with all orders when he

was taken to restrictive housing. He also refers to Department of Correction directives stating that in-cell restraints should be used on "acutely disruptive" inmates to gain compliance with orders and not as a punishment. The defendants attach this directive to their second motion to dismiss.[5] Administrative Directive 6.5, section 8(A) provides that restraints are a form of physical force used to prevent escape, prevent injury to self or others, prevent property damage, ensure compliance with an order, and maintain order. The section specifically states that "[p]hysical force shall not be used for the harassment or punishment of any person." Defs.' Mem., ECF No. 35-2 at 7.

The directive states that restraints are a form of physical force. The plaintiff alleges that this use of force was intended to punish him and not for any permitted purpose. The Court has determined that the plaintiff's allegations stated a plausible claim. The defendants argue that the plaintiff cannot show that the defendants acted maliciously and sadistically. That determination cannot be made on the plaintiff's amended complaint alone. The defendants' motion to dismiss is denied as to the excessive force claim.

The defendants also argue that the plaintiff's allegations regarding the conditions in the cell in which he was confined in in-cell restraints and fail to support an Eighth Amendment claim for unconstitutional conditions of confinement. A review of the prayer for relief in the amended complaint indicates that the plaintiff is not pursuing a separate conditions of confinement claim. If, however, the Court were to construe the amended complaint to include a conditions of

---

[5] The Court may take judicial notice of prison directives when considering a motion to dismiss. *See Lurry v. Ford*, No. 3:13-CV-1157 MPS, 2014 WL 859270, at *2 (D. Conn. Mar. 5, 2014) (citing *Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972)).

confinement claim, the defendants' motion to dismiss that claim should be denied.

The Eighth Amendment "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  However, prisoners are entitled to "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  To state a claim for unconstitutional conditions of confinement, the plaintiff must allege facts supporting an objective component, that the conditions constitute a "sufficiently serious … denial of the minimal civilized measure of life's necessities" and a subjective component, that the defendants possessed a "sufficiently culpable state of mind." *Id.* at 834 (internal quotation marks and citations omitted).

The Second Circuit has held that confinement in an unsanitary cell exposed to human waste supports an unconstitutional conditions of confinement claim.  In *Willey v. Kirkpatrick*, 801 F.3d 51 (2d Cir. 2015), the district court had dismissed claims relating to one period of confinement in unsanitary conditions  and failed to address two other periods of confinement.  The district court rejected the claim because the prisoner had not alleged that human waste overflowed from his toilet into the cell and did not claim that he suffered any injury from the malodorous atmosphere.  The Second Circuit questioned whether living exposed to excrement for days denied an inmate the minimal civilized measure of life's necessities.  *Id.* at 66-67 (citing cases and noting circuit split where exposure to waste lasted three-to-four days).  The Second Circuit rejected any bright-line durational requirement for exposure to unsanitary conditions and any "minimal level of grotesquerie." *Id.* at 68.  *See also Gaston v. Coughlin*, 249 F.3d 156, 161-62 (2d Cir. 2001) (reinstating Eighth Amendment claim for exposure to human waste for several days).

13

In evaluating these claims, the court must consider the duration and severity of the exposure to human waste.  That the prisoner suffered injury as a result of the exposure may support the seriousness of the exposure but is not a required element of the claim.  *Willey*, 801 F.3d at 68.  Applying this standard, the Court cannot conclude as a matter of law that the conditions described by the plaintiff fail to state a plausible conditions of confinement claim.

IV.     Conclusion

Plaintiff's second amended complaint [**ECF No. 41**] was filed without consent or leave of court.  The Clerk is directed to **STRIKE** the second amended complaint from the docket.

Defendants' motion to dismiss [**ECF Nos. 34**] is **GRANTED** as to any claims for damages against the defendants in their official capacities and **DENIED** in all other respects.  Defendants' motion to dismiss [**ECF Nos. 35**] is redundant and is hereby **DENIED**.

**SO ORDERED** this 20th day of December 2016 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge